**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**MARYELLEN RICHTER,**

**Plaintiff,**

**v.**

**18-CV-806**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment.  Dkt. No. 21.  Maryellen Richter ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits.  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos. 11, 17.  For the following reasons, Plaintiff's motion (Dkt. No. 11) is granted to the extent it seeks remand, and the Commissioner's motion (Dkt. No. 17) is denied.

## BACKGROUND

On July 31, 2014, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits, alleging disability beginning on May 30, 2010, based on right side nerve damage from her neck to her foot, and "dislocated" discs in her neck and back that caused her difficulty in standing, walking and bending, and with her

daily chores and activities.  Tr. at 262.[1]  Her claim was denied initially, and she requested

review.  Tr. at 157-74.  Administrative Law Judge Lynette Gohr ("the ALJ") conducted a

hearing on February 8, 2017.  Tr. at 86-128.  Plaintiff, who was represented by counsel,

testified as did an impartial vocational expert.  Tr. at 86-128.  On July 24, 2017, the ALJ

issued a decision in which she found that Plaintiff was not disabled and therefore, not

eligible for benefits.  Tr. at 8-26.  The Appeals Council denied Plaintiff's request for review,

making the ALJ's determination the final decision of the Commissioner.  Tr. at 1-7.  This

action followed.  Dkt. No. 1.


## LEGAL STANDARD

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is

disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step

one, the ALJ must determine whether the claimant is engaged in substantial gainful work

activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or

combination of impairments, that is "severe," meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. §

404.1520(c).  If the claimant does not have a severe impairment or combination of

impairments, the analysis concludes with a finding of "not disabled."  If the claimant does,

the ALJ continues to step three.

---

[1]Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket
No. 8.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals a Listings criterion and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## **DISCUSSION**

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process described above. *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 30, 2010, her alleged onset date. Tr. at 13. At step two, she found that Plaintiff had the following severe impairment: degenerative disc disease of the cervical and lumbar spine, status post cervical fusion at C5-C6. Tr. at 16.[2] The ALJ noted that Plaintiff "has been medically managed for headaches, cervical radiculopathy, right-sided weakness, arm and limb pain, knee pain, left foot calcaneal spurring, toe contusion, spasms, mild obesity, abdominal pain, renal colic, nephrolithiasis, status post cholecystectomy, pregnancy, childbirth, anal fissure, constipation, hemorrhoids, urinary incontinence, dermatitis, sinusitis, tobacco use disorder, and smoking cessation." Tr. at 14. However, the ALJ noted, "there is not enough medical documentation to show that these conditions rise to the level of a severe impairment." Tr. at 14.

At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings, giving special consideration to Listing 1.04 (Disorders of the Spine). Tr. at 16. Next, the ALJ found that Plaintiff retained the RFC to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b),

---

[2] This Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized at length in the papers.

"because claimant is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour work day, and sit for six hours in an eight-hour work day.  Although the claimant is unable to climb ladders, ropes and scaffolds, she is occasionally able to stoop, kneel, crouch, crawl, and climb ramps and stairs.  In addition, the claimant is able to use her right upper extremity to engage in frequent, but not constant, fine motor and gross manipulation."  Tr. at 16.

Continuing to the fourth step, the ALJ found, based on the vocational expert's testimony, that Plaintiff was able to perform her past relevant work as a pillow filler (DOT No. 780.684-066).  Tr. at 21.  Alternatively, based on Plaintiff's age (30 years old), education (at least a high school education), and with the aforementioned RFC, the ALJ concluded that she could perform work that exists in significant numbers in the national economy, specifically, the jobs of Mail Clerk (DOT No. 209.687-026), Cashier II (DOT No. 211.462-010), and Information Clerk (DOT No. 237.367-018).  Tr. at 22.  Accordingly, concluded the ALJ, Plaintiff was not under a disability during the relevant period.  Tr. at 22.

**Analysis**

Before making a final determination regarding a claimant's ability to work, the ALJ is under an affirmative duty to develop the record.  *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (internal quotation marks omitted); *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (stating that "[i]t is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record' in light of 'the essentially

non-adversarial nature of a benefits proceeding,'" even if the claimant is represented by counsel") (internal citations omitted); *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.1512(d)-(f)) (stating that under the applicable regulations, the ALJ is required to develop the claimant's complete medical history). "The requirement that an ALJ clarify a treating source's opinion that a claimant is unable to work is part of the ALJ's affirmative obligation to develop a claimant's medical history." *Hinds v. Barnhart*, No. 03-CV-6509 (JG), 2005 WL 1342766, at *10 (E.D.N.Y. Apr. 18, 2005)

"The ALJ's duty to complete the medical record 'carries particular importance' in light of the 'treating physician rule,' which requires the ALJ to grant controlling weight to the opinion of a claimant's treating physician if the opinion is well supported by medical findings and not inconsistent with other substantial evidence." *Pabon v. Barnhart*, 273 F. Supp. 2d 506, 514 (S.D.N.Y. 2003) (citing cases including *Rosa,* 168 F.3d at 78-79, and *Clark v. Comm'r of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir. 1998)). As one district court explained:

> "[T]hese two principles—the duty to develop a full record and the treating physician rule—do not operate independently of each other. . . . [T]he duty to develop a full record . . . compels the ALJ . . . to obtain from the treating source expert opinions as to the nature and severity of the claimed disability. . . . Until [s]he satisfies this threshold requirement, the ALJ cannot even begin to discharge h[er] duties . . . under the treating physician rule."

*Peed v. Sullivan,* 778 F.Supp. 1241, 1246 (E.D.N.Y. 1991).

Plaintiff contends that there were obvious gaps and ambiguities in the record that the ALJ failed to develop or clarify, and therefore, the RFC was not supported by substantial evidence. Dkt. No. 11-1, pp. 17-26. This Court agrees and finds that there

were several obvious gaps and/or inconsistencies that the ALJ should have addressed but did not.

The first obvious gap relates to Plaintiff's neurological treatment. The record shows that Plaintiff underwent a C5-6 anterior cervical discectomy and fusion with interbody spacer to alleviate disc herniation and radiculopathy on March 15, 2016. Tr. at 577-80. Dr. Gregory Castiglia, Plaintiff's neurosurgeon, performed the surgery. Tr. at 577-80. At a follow up visit on April 4, 2016, Plaintiff stated that she was suffering a significant amount of pain in her neck. Tr. at 581. Dr. Castiglia reported that upon physical exam, Plaintiff demonstrated decreased range of motion of her cervical spine by 25% in all directions. Tr. at 582. Dr. Castiglia opined that Plaintiff would "slowly recover" and that she would "remain out of work at this time." Tr. at 582. This was the final report from Dr. Castiglia in the record. At her hearing on February 8, 2017, Plaintiff testified that she had last been to UB Neurosurgery, Dr. Castiglia's practice, "maybe four or five months ago." Tr. at 101. She testified that she was not currently receiving treatment there because she was pregnant, but that Dr. Castiglia had told her that she had to have another surgery. Tr. at 101-02. Dr. Castiglia's treatment notes and records from this exam were clearly missing and clearly relevant to whether Plaintiff was able to perform basic work activities. Yet, the ALJ did nothing to acquire them.

Secondly, at the hearing, Plaintiff's counsel indicated that records from another medical provider, Cleve Hill Family Center, remained outstanding. Tr. at 89. The

8

ALJ provided an additional 10 days to receive the records, but apparently, did not inquire as to their status or request the records herself.

But, the most significant record issues relate to Plaintiff's treating physician, Dr. Muhammad Ghazi. Dr. Ghazi provided a "medical statement regarding hand and wrist problems for Social Security disability claim," which was dated January 30, 2017. Tr. at 638-39. Therein, he noted, "Patient is under the care of Dr. Castiglia (neurosurgery) and was referred to [a Physical Medicine and Rehabilitation Physician] for further evaluation of her current disease." Tr. at 639. He opined that Plaintiff had a mild pain level, frequent ability for right hand fine and gross manipulation, and occasional ability for left hand fine and gross manipulation, suggesting contrary to the balance of the record, that Plaintiff had greater restrictions in her left extremity than her right. *Compare* Tr. at 638 *with* Tr. at 435 (presentation at ER with right arm and leg weakness from neck down), 445 (right side pain/weakness), 461 ("pins and needles" in right arm), 464 (diminished sensation to pinprick on right arm/leg/body), 467 (diminished sensation to pinprick on right knee and medial leg, right lateral leg and dorsum of the foot, and right sole of the foot and posterior leg), 478 (noting poor arm swing and heel strike on right side), 566 (neck pain with right arm numbness), and 567 (diminished pin prick sensation in right thumb and index finger and significant weakness in right upper extremity/clumsiness in the right hand).

Dr. Ghazi also filled out a "Physical Treating Medical Source Statement" on January 31, 2017 (Tr. at 641-45), which the ALJ erroneously attributed to "Dr. Strauss" of ECMC Family Health Center. Tr. at 20. The form is signed by Dr. Ghazi and bears the

9

same unique handwriting as the January 30, 2017 "medical statement regarding hand and wrist problems for Social Security disability claim." *Compare* Tr. at 638-39 *with* Tr. at 641-45. In the "Physical Treating Medical Source Statement," Dr. Ghazi opines that Plaintiff suffers from pain in her right upper extremity as well as numbness of the right hand and arm. Tr. at 641. He states that Plaintiff: could sit for 30 minutes at one time, and stand for 20 minutes; could stand/walk for about 2 hours in an eight-hour work day, and sit for at least 6 hours; would need to walk every 20 minutes for 10 minutes; needed a job that permitted shifting at will from sitting, standing or walking; would require unscheduled breaks every 30 minutes for 5-10 minutes; could never lift 20 pounds, rarely lift 10 pounds, and only occasionally lift less than 10 pounds; could never stoop, and could rarely look down, twist, crouch, or climb ladders; and would be absent more than 4 days per month as a result of her impairments or treatment. Tr. at 642-44.

The ALJ did not contact Dr. Ghazi about the left/right extremity disparity or inquire further about which doctor authored the January 31, 2017 "Physical Treating Medical Source Statement." If she had, the ALJ would have learned that Dr. Ghazi considered Plaintiff more limited in her right than her left hand in terms of fine and gross motor manipulation, consistent with the other record evidence and with the "Physical Treating Medical Source Statement." She would also have learned that it was Dr. Ghazi who authored the "Physical Treating Medical Source Statement" concluding that Plaintiff was seriously limited, and not "Dr. Strauss." Instead, the ALJ went ahead and evaluated the opinions. Specifically, the ALJ gave "significant weight" to Dr. Ghazi "due to his expertise, his treating relationship with the claimant, and the relative consistency of his

opinions with the overall medical evidence." Tr. at 20. The ALJ took exception to Dr. Ghazi's conclusion that Plaintiff was limited in her left hand as it was "inconsistent with the balance of the record, including his own written explanations indicating 'partial loss of sensation of upper right extremity.'" Tr. at 20.

The ALJ also erroneously stated that Dr. Ghazi "did not identify any postural limitations or any limitations in the ability to lift, carry, stand, walk, or sit[,]" when in fact he had done just that in the "Physical Treating Medical Source Statement," which the ALJ wrongly attributed to someone else. Tr. at 19, 641-45. Not knowing that Dr. Ghazi had authored the "Physical Treating Medical Source Statement," the ALJ gave the postural and exertional limitations therein "reduced weight" because "the opinions are inconsistent with the overall evidence in the file, including the well supported opinions of Dr. Ghazi, Dr. Schwab, Dr. Ransom, and Dr. Tzetzo." Tr. at 20. The ALJ then went on to craft an RFC that was completely inconsistent with the limitations Dr. Ghazi identified in the "Physical Treating Medical Source Statement." This was clearly erroneous.

The Commissioner contends that Plaintiff's counsel had an ongoing duty to provide evidence and that a "theoretical possibility that there may be additional evidence is not sufficient for remand." Dkt. No. 17-1, p. 15. While a claimant does bear the burden of proof, an ALJ's affirmative duty to develop the record exists even when a social security claimant is represented by counsel. *Pratts*, 94 F.3d at 37; *Cancel v. Colvin*, No. 14-CV-2034 PKC, 2015 WL 865479, at *5 (S.D.N.Y. Mar. 2, 2015) ("It is somewhat troubling that [claimant's] counsel . . . failed to bring these deficiencies in the medical record to the ALJ's

11

attention; counsel is thus at least partly responsible for the ALJ's error. Nevertheless, the law is clear that an ALJ's duty to develop the record exists irrespective of whether the claimant is represented."); *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016) (holding that "the ALJ did not satisfy his duty to develop the record even though he advised [claimant's] counsel to obtain the missing . . . treatment notes"). Moreover, the fact that Plaintiff had received more treatment than the record reflected was apparent, not merely theoretical, as evidenced by Plaintiff's testimony that Dr. Castiglia examined her after April of 2016. It was incumbent upon the ALJ to develop the evidence where it is apparent from the face of the record that it lacks necessary information. *Rodriquez v. Colvin*, No. 14-CV-214S, 2015 WL 5037014, at *4 (W.D.N.Y. Aug. 25, 2015). Remand is appropriate where this duty is not discharged, as was the case here. *See, e.g., Moran*, 569 F.3d at 114-15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision."). Accordingly, this case is remanded to the Social Security Administration with directions to obtain the missing records from Dr. Castiglia, to get clarification from Dr. Ghazi regarding Plaintiff's right hand limitations, and both to confirm that Dr. Ghazi authored the January 2017 "Physical Treating Medical Source Statement," and to give that statement appropriate treatment in light of the treating physician rule discussed above.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is hereby GRANTED to the extent it seeks remand, and the

Commissioner's motion for Judgment on the pleadings (Dkt. No. 17) is DENIED.  The

Clerk of the Court is directed to close this case.


        **SO ORDERED.**

DATED:     Buffalo, New York
             March 25, 2020

                                                  *s/ H. Kenneth Schroeder, Jr.*
                                                  **H. KENNETH SCHROEDER, JR.**
                                                  **United States Magistrate Judge**